**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**
**CIVIL ACTION NO. 13-420-ART-JGW**

**JAMEY COPE**                                                          **PETITIONER**

**V.**

**GARY BECKSTROM, WARDEN**                               **RESPONDENT**

**REPORT AND RECOMMENDATION**

Pending is petitioner Jamey Cope's pro se petition for habeas corpus relief pursuant to 28

U.S.C. §2254. Doc. 1. After examining the record and applicable law, the Court recommends

that the petition be denied.

### A. Factual and Procedural History

In 2008, petitioner was indicted for one count of assault in the first degree, two counts of

wanton endangerment in the first degree and for being a persistent felony offender in the second

degree. Doc. 11-2, p. 1-3. As related by the Kentucky Supreme Court in its June 2010 opinion

affirming on direct appeal, the underlying facts and procedural history are as follows:

> Cope, Sloan [Cope's girlfriend], and others, including Sloan's daughter,
> Christina Massengale, drank at a local bar. After returning home, Cope went
> upstairs to another apartment to visit his former girlfriend. Sloan became jealous
> and called Cope to tell him to come home or she would lock him out. Sloan then
> locked the door and told Massengale to call the police if Cope came home. When
> Cope arrived home and kicked the locked door, Massengale called 911. Cope then
> kicked out a window to gain entrance to the apartment. Cope grabbed the phone
> from Massengale and destroyed it. Massengale fled to fetch her brother. Once
> outside, Massengale flagged down an officer who had been dispatched in response
> to her 911 call.
> Meanwhile, inside their apartment, Cope called Sloan names and
> threatened to kill her. Cope cut Sloan's face over her eye with a knife, jabbed the
> knife at Sloan's head, and punched her in the face. While trying to defend herself
> against the knife attack, Sloan cut her hands by grabbing the knife blade.

When police entered the apartment, Sloan and Cope were in a bedroom behind a closed door. Officers' repeated efforts to pry open the door were largely unsuccessful; although, at one point, they were able to open the door slightly and saw Cope brandishing a knife in a downward direction toward Sloan. At one point, an officer sprayed pepper spray into the bedroom. At another point, Cope swung the knife in the officers' direction.

Officers eventually splintered the door and entered the bedroom. According to their trial testimony, Cope was combative and resisted arrest. One of the officers shocked Cope with a stun gun, but Cope recovered and resumed the fight. An officer then delivered several blows to Cope's leg to get "pain compliance" from Cope. Even after the officers finally handcuffed him, Cope remained combative and threatened to kick out the windows of the police cruiser. At the police station, Cope stated that he and Sloan had gotten into an argument and that she had threatened to kill herself.

As a result of the fracas, Sloan suffered a fracture of the orbital floor of her eye socket, which required surgical repair. Sloan also suffered knife wounds to her forehead and hands. One hand required a surgical repair of damaged nerves.

The grand jury indicted Cope on one count of first-degree assault for "intentionally causing serious physical injury" to Sloan by cutting her with a knife; two counts of first-degree wanton endangerment for his actions directed at the police officer; and one count of being a PFO 2. All charges resulted in a jury trial. At the conclusion of the evidence at trial, the trial court instructed the jury on the lesser-included offenses of second-degree assault and fourth-degree assault but refused Cope's request for an EED instruction. The jury found Cope guilty of first-degree assault and one count of second-degree wanton endangerment but acquitted Cope on the other count of first-degree wanton endangerment. The jury also found Cope guilty of being a PFO 2.

The jury recommended that Cope be sentenced to twenty years' imprisonment on the assault conviction and twelve months' incarceration (and a $500 fine) for the misdemeanor wanton endangerment conviction. The jury recommended enhancement of Cope's assault penalty to thirty years' imprisonment as a result of his PFO 2 conviction. The trial court sentenced Cope in accordance with the jury's recommendation . . . .

*Cope v. Commonwealth*, 2010 WL 2471865, at *1-2 (Ky. June 17, 2010) (footnote omitted).

The only issue petitioner raised in his direct appeal was an argument that the trial court

erred by refusing to give an instruction regarding extreme emotional disturbance (EED).[1]

---

1 Under Kentucky Revised Statute (KRS) 508.010(1)(a), a person is guilty of assault in the first degree when he "intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ." KRS 508.040(1) provides in relevant part that "[i]n any prosecution [for first-degree assault] in

The Kentucky Supreme Court rejected petitioner's EED claim, holding that:

> Cope's alleged bases for an EED instruction . . ., even viewing the circumstances from his point of view, . . . do not provide a reasonable explanation or excuse for him to have become so enraged, inflamed, or disturbed as to be entitled to an EED instruction.
>
> First, voluntary intoxication or substance abuse is an insufficient basis to mandate an EED instruction. Second, anger does not entitle a defendant to an EED instruction. Also, neither Cope's fear of encountering someone with whom he apparently was not on good terms, nor Sloan's locking the apparently intoxicated Cope out of their apartment, nor her insinuation that Cope would be taken to jail for his actions, are so inflaming or disturbing as to, even from Cope's point of view, cause Cope to lose control over his actions. In fact, as will be discussed later, Cope testified that, essentially, he was able to control his actions.
>
> What we are left with is whether Cope was entitled to an EED instruction because of his contention that Sloan threatened suicide and raised a knife in a manner consistent with carrying out that threat. Under the facts of this case, no EED instruction was required.
>
> Perhaps, one could argue, Sloan's alleged threat to commit suicide-a threat she denied making, but we must view the evidence in a light most favorable to Cope for purposes of reviewing his claim that he was entitled to an EED instruction--and the wielding of an instrument readily capable of carrying out that threat could theoretically have been a triggering event for EED purposes. But in the case at hand, Cope has not pointed to any act he undertook that, even from his point of view, could reasonably be seen as being aimed at thwarting Sloan's suicidal threat. Cope did not dispute the Commonwealth's assertions in its brief that Cope claimed self-defense as the reason he assaulted Sloan. In other words, although he claims now that Sloan raised a knife as if to commit suicide, Cope testified that he punched Sloan because he believed she was going to attack him with the knife. Also, Cope testified that he was compliant with the police, which logically denotes a person who is able to control his actions, not a person who is

---

which intentionally causing physical injury or serious physical injury is an element of the offense, the defendant may establish in mitigation that he acted under the influence of extreme emotional disturbance . . . ."

The Kentucky Supreme Court explained the practical effect of EED thusly:

> A finding that a defendant acted under the influence of EED does not entitle that defendant to an outright acquittal. But a finding that a defendant acted under EED is important because it reduces the punishment a defendant may receive. In the case at hand, if Cope had been found to be acting under EED, his first-degree assault conviction, which normally is a Class B felony, would have been reduced to a Class D felony. In practicality, this means that Cope's possible sentence would have been reduced from a range of ten to twenty years' imprisonment to a range of one to five years' imprisonment.

*Cope*, 2010 WL 2471865, at *2 (footnotes omitted).

uncontrollably inflamed. In other words, Cope's testimony failed to show how, even from his point of view, he was so inflamed or enraged by Sloan's alleged suicidal threat as to have created a jury issue about whether he was suffering from EED. As the Commonwealth notes, Cope's "own testimony supports the fact that he was in control of his actions at all times. Therefore, the trial court's refusal to give an EED instruction did not violate his rights...."

*Id.* at *4 (footnotes omitted).

In August 2010, petitioner filed a motion for state post-conviction relief pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42, raising numerous claims of ineffective assistance of counsel. Doc. 11-3, p. 47-50, 11-4, p. 1-17. "The trial court denied Cope's motion on its face, in part, and set an evidentiary hearing to determine the merits of one remaining claim: that trial counsel was ineffective by failing to meet with [petitioner] without undue delay to begin discussion of the case and defensive strategies." *Cope v. Commonwealth*, 2013 WL 4400518, at *1 (Ky.App. Aug. 16, 2013).

At the post-conviction hearing,[2] petitioner's counsel testified that though she did not have notes showing the precise dates she met with petitioner she did recall having met personally with petitioner multiple times and having spoken to him on the phone on several other occasions. In short, counsel testified as to having had "significant" contact with petitioner prior to trial. Tape (doc. 19) at about 12:10:10. Counsel also testified that she had used two investigators to help prepare petitioner's defense and that, at counsel's request, another attorney from the Department of Public Advocacy had visited petitioner in jail.

Petitioner also testified at the hearing. The essence of his testimony was that he did speak with counsel about five times on the phone but met with her in person rarely. When asked on

2 Pursuant to the Court's order, respondent supplemented the record with a copy of the state court post-conviction hearing.

cross-examination what evidence counsel did not present at trial which would have made a difference in the case, petitioner offered only a nonresponsive answer that that the victim had not testified truthfully. Petitioner then declared that during his trial testimony he had "told everything" and had left out nothing. Tape (doc. 19) at about 12:39:15.

After the trial court denied his RCr 11.42 motion petitioner appealed to the Kentucky Court of Appeals, arguing "that the trial court abused its discretion by holding that Cope had received effective assistance of trial counsel and by failing to rule on the cumulative effect of trial counsel's errors." *Id.* In August 2013, the Kentucky Court of Appeals affirmed, holding as follows:

> Cope first argues, as he did before the trial court, that his trial counsel was ineffective by failing to meet with him without undue delay and discuss the case and defense strategies. Cope's trial counsel testified that he [sic] maintained sufficient contact with the defendant, advised the defendant during the pretrial process, and attempted to form potential defense strategies. Cope does not challenge these statements, but rather just makes a general argument of error. Because he offers no support for his argument of trial court error, and his counsel's testimony constitutes substantial evidence to support the trial court's determination, his argument on appeal fails.
>
> Cope next argues that his trial counsel was ineffective by failing to contact or call any witnesses; by failing to investigate, prepare, and present a defense; and by failing to challenge the evidence presented against Cope or make objections. Cope has failed to identify any precise error relating to the trial court's rejection of these claims, and instead rehashes his RCr 11.42 argument to this court. Cope's allegations are directly contradicted by both the trial record and later testimony by trial counsel. The trial record indicates that Cope presented trial counsel with a list of potential witnesses the night before trial and that the trial court subsequently denied a motion for a continuance in order to procure the witnesses. Trial counsel claimed that unsuccessful attempts had been made to contact some of the witnesses and that other witnesses would only testify as to Cope's prior bad acts. In addition, the trial record shows no evidence of trial counsel unpreparedness. Instead, the trial record demonstrates that counsel was prepared for trial, attempted to introduce bad character evidence against the victim, and further sought a jury instruction of extreme emotional distress. Lastly, Cope fails to identify what, if any, objections or evidentiary challenges trial counsel failed to

make, therefore resulting in an argument comprised of pure speculation. Accordingly, Cope has failed to show that the trial court abused its discretion when it denied his motion for RCr 11.42 relief.

*Id.* at *2-3.

Petitioner filed the §2254 petition at hand in December 2013. Doc. 1. The petition raises two main issues. First, petitioner alleges his rights to due process and to present a defense were violated when the trial court refused to give an EED instruction. *Id.* at p. 5-7. Second, he contends his trial counsel was ineffective. *Id.* at p. 7-8. Specifically, the entirety of petitioner's ineffectiveness argument is:

> Counsel failed to: meet with Petitioner withour [sic] undue delay or meet with any regularity to develop strategies or plans; contact witnesses, an extensive list of whom was provided by Petitioner to counsel; investigate, adequately prepare for or present a defense; challenge the testimony or evidence presented or provide any reasonable show of defense.
>
> Trial court failed to grant request for ineffectiveness of counsel when the foregoing issues of blatant ineffectiveness were brought up in court and defense counsel's refusal to recuse at Movant's insistance [sic] and request that she be replaced.

*Id.* at p. 7.

**B. Analysis**

**1. Standard of Review**

The Sixth Circuit has recently detailed the standard of review for §2254 petitions as follows:

> Because Petitioner filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), that statute governs this Court's review of the case. A writ of habeas corpus may not be granted under AEDPA for any claim that was adjudicated on the merits in state court unless the adjudication of that claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). . . .The Supreme Court has recognized that "AEDPA imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett,* [559]—— U.S. [766]——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (footnote and citations omitted).

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "If the state-court decision identifies the correct governing legal principle in existence at the time, [however,] a federal court must assess whether the decision unreasonably applies that principle" under the "unreasonable application" clause of § 2254(d)(1). *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011) (citation and internal quotation marks omitted).

Under the "unreasonable application" clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. When assessing unreasonableness, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, the application must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

In determining whether a state-court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings of the Supreme Court's decisions "as of the time of the relevant state-court decision." *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citation and internal quotation mark omitted); *see also Greene v. Fisher,* —— U.S. ——, 132 S.Ct. 38, 44–45, 181 L.Ed.2d 336 (2011) (holding that clearly established federal law as determined by the Supreme Court under AEDPA is the law at the time of the state-court adjudication on the merits, not at the time the conviction becomes final). The

reviewing court, however, may look to decisions of lower courts of appeals "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir.2010) (alteration in original and citation and internal quotation mark omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (citation omitted). Further, "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (citation omitted).

In addition, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based upon a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ayers v. Hudson,* 623 F.3d 301, 308 (6th Cir.2010) (brackets omitted) (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).

Finally, the Supreme Court has recently clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster,* —— U.S. at ——, 131 S.Ct. at 1398.

*Brown v. McKee*, 460 Fed.Appx. 567, 573-74 (6th Cir. 2012).

The Sixth Circuit has summarized the standard of review for ineffective assistance of

counsel claims thusly:

To establish a claim for ineffective assistance of counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It requires a "substantial, not just conceivable," likelihood of a different outcome. *Richter,* —— U.S. at ——, 131 S.Ct. at 792 (citation omitted).

With respect to determining whether counsel's representation fell below an objective standard of reasonableness, counsel's performance is viewed "under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. "The reasonableness of counsel's actions must be judged on the facts of the petitioner's case, viewed as of the time of counsel's conduct, recognizing that counsel 'is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Smith v. Lafler,* 175 Fed.Appx. 1, 4 (6th Cir.2006) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Moreover, in reviewing ineffective assistance of counsel claims, a court must begin with the premise that "under the circumstances, the challenged action [s] might be considered sound trial strategy." *Pinholster,* —— U.S. at ——, 131 S.Ct. at 1404 (alteration in original) (quoting *Strickland,* 466 U.S. at 689); *see also Yarborough v. Gentry,* 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("[T]here is a strong presumption that [counsel took certain actions] for tactical reasons rather than through sheer neglect." (citation omitted)). Put another way, it is the challenger's burden to demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," as "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential.' " *Richter,* —— U.S. at —— —, 131 S.Ct. at 788 (citations omitted). "[W]hen the two apply in tandem, review is 'doubly' " deferential. *Id.* (citation omitted). Moreover, the *Strickland* standard is a general standard, "so the range of reasonable applications is substantial." *Id.* (citation omitted); *see also Knowles v. Mirzayance,* 556 U.S. 111, 123–25, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter,* —— U.S. at ——, 131 S.Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable[, but] .... whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

*Brown*, 460 Fed.Appx. at 575-76.

## 2. EED Instruction

Petitioner first reiterates his state court argument that he was entitled to an EED

instruction because: he had ingested large amounts of morphine and alcohol on the day in

question; his girlfriend had told him that her son was coming to attack him; and his girlfriend had threatened to take her own life.  Petitioner asserts that the lack of an EED instruction resulted in a denial of his right to present a complete defense.

Respondent correctly asserts that petitioner did not fairly raise the lack of an EED instruction as a federal constitutional issue in state court.  The entirety of petitioner's federal law argument to the Kentucky Supreme Court was:

> A criminal defendant has a federal constitutional right to present a defense.  *See California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.  We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense.")[.]

Doc. 11-2, p. 55.

"As a necessary component of the exhaustion of state remedies doctrine, a petitioner's claim must be 'fairly presented' to the state courts before seeking relief in the federal courts." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005).  The Sixth Circuit has instructed that "there are four actions a petitioner can take which are significant to the determination of whether a claim has been 'fairly presented:' (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Id.* at 613 (block quote omitted).

"General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated."  *McMeans v. Brigano*, 228 F.3d

10

674, 681 (6th Cir. 2000). "A petitioner need not cite federal law 'book and verse' to fairly present a claim, but the factual and legal underpinnings of the claim must be presented as a federal claim to the state courts . . . ." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citations omitted).

Petitioner's one sentence reference to federal law, without specific elaboration on how the federal law was violated (i.e., the legal and factual underpinnings of the claim), is insufficient. *See, e.g., Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) ("To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments."). Accordingly, the issue has been procedurally defaulted and is not properly subject to federal habeas review.[3] *Id.* ("In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted. While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review.") (citations omitted).

In addition, though not discussed by the parties, petitioner's claim is foreclosed by the fact that federal habeas relief is not available in non-capital cases for claims regarding a state court's failure to give a lesser included offense instruction. *See, e.g., McMullan v. Booker*, 761 F.3d 662, 667, 672 (6th Cir. 2014) (holding that because "[t]he Supreme Court . . . has never held

---

3 Though the procedural default rule is not jurisdictional, petitioner has neither argued nor shown cause and prejudice for his failure to present properly the issue, nor has he demonstrated actual innocence or the existence of a fundamental miscarriage of justice.

that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case[,] . . . defendants do not have a constitutional right to a lesser-included-offense instruction in non-capital cases."). As explained by the Kentucky Supreme Court, the practical effect of an EED instruction is equivalent to that of a lesser included offense instruction since a finding of EED results in reduced punishment. Indeed, the Sixth Circuit has analyzed a habeas petitioner's claim that he was entitled to an EED instruction under the rubric of a claim involving entitlement to a lesser included offense instruction. *See Bowling v. Parker*, 344 F.3d 487, 499-502 (6th Cir. 2003). Therefore, petitioner's EED claim is not cognizable on federal habeas review.[4]

### 3. Ineffective Assistance of Counsel Claims

Petitioner specifically contends his counsel: failed to meet regularly with him; failed to contact witnesses; failed to investigate or prepare a defense adequately; and failed to challenge the evidence at trial. Petitioner also contends the trial court erred by not forcing counsel to withdraw. Doc. 1, p. 7.

#### a. Refusal by Trial Court to Disqualify Counsel

Before analyzing the claims regarding petitioner's trial counsel, the Court will briefly address the claim that the trial court erred by not ordering petitioner's counsel to withdraw. Because the trial court's failure to disqualify counsel took place before petitioner's trial, the

---

4 Petitioner's argument that he was entitled to the EED instruction based on Kentucky state law is not cognizable in federal habeas proceedings. *See, e.g., Bowling v. Parker*, 138 F.Supp.2d 821, 906 (E.D.Ky. 2001) ("However, neither a violation of state law nor a state court's decision applying purely state law may be reviewed by a federal habeas corpus court since any such errors in that regard are not of a constitutional magnitude. Thus, when the evidence presented at trial does not support a particular jury instruction, based upon a state court's interpretation and application of state law, an alleged error predicated upon that particular jury instruction is not cognizable in federal habeas corpus review unless the failure amounted to a fundamental miscarriage of justice.") (citations omitted). Moreover, petitioner has not shown unreasonableness in the Kentucky Supreme Court's decision that the facts

alleged error could--and should--have been raised in petitioner's direct appeal (as the trial court

ruled in its order denying petitioner's RCr 11.42 claim). Doc. 11-4, p. 24. Kentucky has a

longstanding procedural rule—followed by the trial court in the case at hand[5]--prohibiting raising

an issue in an RCr 11.42 motion which could and should have been raised on direct appeal. *See,*

*e.g., Chatman v. Commonwealth*, 2010 WL 4137157, at *2 (Ky.App. Oct. 22, 2010) ("The rule

still stands that RCr 11.42 does not provide an opportunity to revisit issues which already should

have been adjudicated in a direct challenge.") (citing *Leonard v. Commonwealth*, 279 S.W.3d

151, 156 (Ky. 2009)). Because Kentucky's procedural rule is well established and was applied in

this case, it is an adequate and independent state law ground which bars federal habeas relief.

*See, e.g., Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 431 (6th

Cir. 2006) ("For noncompliance with a state procedure to serve as a bar to habeas review . . .

[f]irst there must be a state procedure in place that the petitioner failed to follow. Second, the

state court must have actually denied consideration of the petitioner's claim on the ground of the

state procedural default. Third, the state procedural rule must be an adequate and independent

state ground to preclude habeas review. This inquiry generally will involve an examination of the

legitimate state interests behind the procedural rule in light of the federal interest in considering

---

simply did not warrant an EED instruction.

5 The Kentucky Court of Appeals did not address the issue of the trial court's failure to order petitioner's counsel to withdraw, thereby making the trial court the last state court to issue a reasoned opinion on the issue. *See, e.g., Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003) ("Furthermore, a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case 'clearly and expressly states that its judgment rests on a state procedural bar.'") (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

In fact, petitioner did not explicitly raise the trial court's alleged error in his appellate brief. *See* Doc. 11-5, p. 5-16. "It is well settled that a prisoner seeking habeas relief in federal court must have presented the claim upon which he seeks relief to the state appellate courts." *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000). Therefore, even if the Court were to somehow conclude that petitioner was excused from raising this issue in his direct appeal, his subsequent failure to raise it explicitly in his appeal of the denial of his RCr 11.42 motion would nonetheless be

federal claims. A state procedural rule must be firmly established and regularly followed to constitute an adequate basis for foreclosing habeas review. A state procedural rule is an independent ground when it does not rely on federal law.") (quotation marks and citations omitted). Petitioner has not shown cause or prejudice to overcome the default, nor has he shown that applying the procedural default would result in a fundamental miscarriage of justice. *See id.* ("[T]he petitioner can overcome the procedural default by either demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice.") (quotation marks omitted).

### b. Failure to Challenge Evidence

In its entirety, this sub-argument is that counsel was ineffective for failing to "challenge the testimony or evidence presented or provide any reasonable show of defense." Doc. 1, p.7. The trial court rejected this claim as being fatally vague and conclusory, aptly noting that the argument was "merely a conclusion that is not supported by any specific facts." Doc. 11-4, p. 23. The Kentucky Court of Appeals agreed, holding that petitioner "failed to identify any precise error" and had only raised "an argument comprised of pure speculation." Doc. 11-5, p. 33-34.

Defendant's federal habeas petition is equally fatally vague, conclusory and speculative. The petition does not state what testimony counsel should have "challenge[d]" or how any "challenge" by counsel likely would have affected the outcome of the case. Defendant likewise fails to specify what "reasonable show of defense" counsel should have presented, or how a

---

fatal to his petition for federal habeas relief.

"show of defense" would likely have affected the outcome of the case.[6]

Even though pro se petitions are to be construed liberally, vague and/or conclusory claims are insufficient to warrant federal habeas relief.  *See, e.g., Dickens v. Brunsman*, 2009 WL 3199066, at *13 (S.D. Ohio Sept. 29, 2009) ("Conclusory allegations of the violation of a constitutional right, without more, are insufficient to warrant habeas corpus relief."); *McKissick v. Warden Evans Correctional Institution*,  2013 WL 4585613, at *10 (D.S.C. Aug. 28, 2013) ("Vague allegations, without any explanation of the alleged constitutional errors, do not warrant federal habeas relief."); *Cross v. Stovall*, 238 Fed. Appx. 32, 39 (6th Cir. 2007) ("Cross's ineffective assistance claim is doomed by the fact she makes nothing more than conclusory assertions about actual prejudice.").   Therefore, petitioner is not entitled to relief.

---

6 Although petitioner's prolix reply brief is not a model of clarity, it appears as if he attempts to claim that his failure to raise a sufficiently specific issue in state court was attributable to his pro se status.  Petitioner cites to no Kentucky case requiring the appointment of counsel to supplement a vague/conclusory claim and, in fact, Kentucky law is to the contrary.  *See, e.g., Brown v. Commonwealth*, 2010 WL 323146, at *3-4 (Ky.App. Jan. 29, 2010) ("Finally, Brown argues that his trial counsel was ineffective by failing to conduct a pre-trial investigation. RCr 11.42(2) requires that the movant 'state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds.' A vague allegation that counsel failed to investigate, without offering specific facts as to what such an investigation would have revealed, is insufficient to support an RCr 11.42 motion.").

Petitioner also argues that the petition falls under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), in which the Supreme Court held that ineffective assistance of counsel at state collateral review proceedings could constitute cause for a procedural default.  Petitioner first raised his *Martinez* argument in his reply brief in this Court.  It is well settled that it is improper to raise arguments for the first time in a reply brief, even in a §2254 proceeding.  *See, e.g., Perry v. Taylor*, 2014 WL 840580, at *10 (E.D.Ky. Mar. 4, 2014) (granting motion to strike portion of a reply brief because "[t]he claim regarding juror Donna Vanover in Petitioner's Reply is a claim raised for the first time in a reply brief. The Sixth Circuit has consistently held that arguments made for the first time in a reply are waived.").  In addition, petitioner does not explain sufficiently how his post-conviction counsel was ineffective.

Next, even though the discussion in the reply brief is amplified compared to the original §2254 petitioner, the reply brief's discussion remains fatally vague, conclusory and speculative.  For example, in his reply, petitioner contends: "[s]pecifically, Mr. Cope alleges that his trial attorney failed to marshal together the information and witnesses to corroborate his story and to effectively impeach the witnesses for the state. Mr. Cope's attorney never had a good handle on Mr. Cope's version of events."  Doc. 16, p. 27.

Finally, to the extent petitioner's reply can be liberally construed as supplementing his original petition by raising new, more specific allegations, those new allegations are not properly cognizable because petitioner failed to properly present them to state court(s).

### c. Failure to Investigate and Present a Defense

The entirety of this sub-argument is that counsel was ineffective for failing to "investigate, adequately prepare for or present a defense." Doc. 1, p. 7. The Kentucky Court of Appeals found petitioner's claim to lack requisite specificity and, in addition, held that "the trial record shows no evidence of trial counsel unpreparedness. Instead, the trial record demonstrates that counsel was prepared for trial, attempted to introduce bad character evidence against the victim, and further sought a jury instruction of extreme emotional distress." Doc. 11-5, p. 33.

The allegations regarding failure to present a defense appear to be essentially duplicative of the previously-discussed claim that counsel failed to "provide any reasonable show of defense." The remainder of the sub-argument is that counsel failed to investigate. Once again, that claim is fatally vague and conclusory in that it does not state what counsel should have investigated, what information that investigation would purportedly have yielded and how the information would have been of such magnitude as to have affected the outcome of the case. *See, e.g., Duvall v. Bell*, 2012 WL 300800, at *21 (E.D.Mich. Jan. 31, 2012) ("As to each of trial counsel's claimed investigative failures, however, Petitioner has failed to present any witness affidavits or other documentation to substantiate his claims. His speculative and conclusory allegations regarding the content of such testimony do not establish that trial counsel was ineffective, that he was deprived of a substantial defense, or that he is entitled to federal habeas relief.").[7]

---

7 In addition, during the state post-conviction hearing, counsel testified as to having had two investigators working on petitioner's case and petitioner testified as to at least one investigator having visited him at the jail where he was housed. Counsel was also successful in getting the jury to acquit petitioner on one of the wanton endangerment

### d. Failure to Contact Witnesses

In his petition, petitioner tersely and without elaboration alleges counsel was ineffective for failing to "contact witnesses, an extensive list of whom was provided by Petitioner to counsel . . . ." Doc. 1, p. 7. The trial court explained the issue more fully as follows:

> In short, the defendant presented a list of witnesses to defense counsel the night before the trial claiming that they would be relevant to the defense. The defendant personally moved the Court for a continuance in order to obtain the witnesses. The Court denied the motion claiming [sic] it was too late to delay the trial . . . considering that the defendant knew about the witnesses long before the trial date.
> Defense counsel also noted on the record that various attempts had been made . . . to locate some of the witnesses identified on the list but they simply were not accessible. Additionally, defense counsel explained to the Court that several other witnesses on the list would attempt to testify only as to prior bad acts of the victim unrelated to the case at hand, and in defense counsel's opinion, the testimony would likely be considered inadmissible character evidence. Defense counsel explained this same reasoning to the defendant as well prior to trial.

Doc. 11-4, p. 21-22.

The trial court held that counsel was not deficient because attempts had been made by counsel to contact some of the witnesses while other witnesses had not been called for strategic reasons due to the inadmissible nature of their testimony. *Id.* at 22. The trial court also held that petitioner failed to satisfy the prejudice prong of the *Strickland* test because: a) the uncalled witnesses' testimony would have been inadmissible due to the focus on the victim's bad character; and b) the evidence against petitioner was overwhelming. *Id.* at 22-23. The Kentucky Court of Appeals affirmed, again noting that the record showed that petitioner had not presented the witness list to counsel until the day before trial and counsel had told the trial court that she had tried unsuccessfully to contact some of the witnesses and some potential witnesses would

charges.

have only offered bad acts testimony regarding the victim.  Doc. 11-5, p. 33.

The allegations in petitioner's §2254 petition are manifestly insufficient to warrant federal habeas relief.  For example, petitioner has offered nothing from the erstwhile witnesses, such as an affidavit, to demonstrate what their testimony would have been.  *See, e.g., Bowman v. Rapelje*, 2014 WL 3767805, at *6 (E.D.Mich. July 31, 2014) ("Petitioner has not provided affidavits from any of the witnesses who he believes that counsel should have called at trial.  His conclusory allegations about what those witnesses would have said are insufficient to demonstrate that counsel erred or that he was prejudiced by counsel's conduct.").  Moreover, petitioner has not met his burden to show that the Kentucky courts' application of the *Strickland* standard was unreasonable.[8]

### e. Failure to Meet with Petitioner

Finally, petitioner contends counsel was ineffective for failing to "meet with Petitioner

---

[8] In his reply brief, petitioner alleges that counsel was knowingly unprepared due to her failure to contact witnesses. However, petitioner does not address the state courts' findings that counsel elected not to pursue some of the witnesses for strategic reasons (due to the inadmissibility of the witnesses' planned testimony).  Those findings are consistent with petitioner's former counsel's testimony at the state habeas hearing and, consequently, are not unreasonable under the highly deferential standard of review this Court must employ.  Moreover, as previously discussed, it is improper for petitioner to add new arguments in a reply brief. Also, the main thrust of petitioner's reply brief on this topic—that the witnesses on the list could have corroborated petitioner's theory that his girlfriend had threatened to commit suicide—was not specifically raised anywhere in his brief before the Kentucky Court of Appeals.  See Doc. 11-5, p. 5-16.

Finally, petitioner's unsupported, self-serving assertions in his reply brief that these specific witnesses were available to testify and that their testimony would have benefitted petitioner is—standing alone--insufficient to warrant habeas relief.  *See, e.g., Jordan v. Rapelje*, 2013 WL 766190, at *10 (E.D.Mich. Feb. 28, 2013) ("Petitioner also claims the police report could lead to exculpatory evidence because it references three potential witnesses—people who were present at Reginald Furlow's residence at the time of the crime. Petitioner's claim is purely speculative. He provides no statements or affidavits from the people he believes could offer exculpatory evidence. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief or necessitate an evidentiary hearing."); *Hall v. Davis*, 2012 WL 6084175, at *6 (E.D.Mich. Dec. 6, 2012) ("In this case, petitioner states that he informed trial counsel of potential witnesses, including Cortez Lemons, Kim Berkland, Jake Mikan and Colleen Wolworth, all of whom he believes would have testified on his behalf. Nonetheless, petitioner does not produce any witness affidavits to establish their ability to testify or confirm the substance of their potential testimony. Ultimately, petitioner's conclusory allegations are insufficient to establish that counsel was ineffective under the *Strickland* standard.").

withour [sic] undue delay or meet with any regularity to develop strategies or plans . . . ." Doc. 1, p. 7. The trial court held an evidentiary hearing on this issue, at which petitioner's former counsel testified as to having conducted multiple in-person visits with petitioner as well as having spoken to him multiple times telephonically. Following that hearing, the trial court held that "defense counsel had sufficient contacts with the defendant during the pre-trial process leading up to the trial, and . . . counsel did investigate the case, advise the defendant, and form possible defense strategies during the course of her representation of the defendant." Doc. 11-5, p. 3. In its opinion affirming, the Kentucky Court of Appeals held:

> Cope's trial counsel testified that he [sic] maintained sufficient contact with the defendant, advised the defendant during the pretrial process, and attempted to form potential defense strategies. Cope does not challenge these statements but just makes a general argument of error. Because he offers no support for his argument of trial court error, and his counsel's testimony constitutes substantial evidence to support the trial court's determination, his argument on appeal fails.

Doc. 11-5, p. 32-33.

Respondent correctly notes that petitioner's §2254 petition "merely makes conclusory allegations of deficient performance without addressing identifiable or specific prejudices suffered as a result of counsel's performance." Doc. 11, p. 20. As previously discussed, vague and/or conclusory claims are insufficient to warrant federal habeas relief.

Perhaps cognizant of the deficiencies of his §2254 petition, in his reply brief petitioner amplifies his claim by asserting that he did not meet with his trial counsel until his pretrial conference in March 2008. Doc. 16, p. 16. Petitioner further contends that counsel did not discuss petitioner's version of the case before petitioner was sent for a competency evaluation, and that counsel's main focus was to get petitioner to plead guilty. Petitioner asserts he tried to

give counsel a list of prospective witnesses a week before trial but counsel refused to take the list until the day before trial. All of those assertions are in general accord with petitioner's testimony at the state habeas hearing.

However, at the hearing, petitioner's former counsel testified to the contrary. She was unable to offer specifics as to dates, but she testified that she did recall meeting petitioner multiple times in person and speaking to him multiple times on the phone. She testified that she asked for the competency evaluation because her contacts with petitioner caused her to doubt whether he comprehended the seriousness of the charges against him. She also testified that she was able to raise at the competency hearing the issue of petitioner not having received his medications due to her contacts with him. She also testified that she did discuss trial procedures and strategies with petitioner but was hampered in her efforts because petitioner's version of events and the version of events related by the police and the 911 tape recording were starkly different.

Petitioner raised none of these specific arguments to the Kentucky Court of Appeals, a fatal error which petitioner has not even attempted to explain. In addition, as respondent correctly notes in his response, counsel was successful in getting the jury to acquit on one felony charge. Moreover, there was ample testimony in the record to support the state courts' conclusions that petitioner's counsel adequately met and communicated with petitioner and that petitioner had been unable to demonstrate any prejudice.[9]

---

9 Tellingly, at the state habeas hearing petitioner testified that he "told everything" to the jury when he testified. Tape (doc. 19) at about 12:39:15. Consequently, other than a generic claim that the victim had lied in her testimony, petitioner was unable to point with specificity to anything which he was unable to present to the jury due to counsel's

### C. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jamey Cope's 28 U.S.C. §2254 petition (doc. 1) be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 5th day of November, 2014.

Signed By:

*J. Gregory Wehrman*

**United States Magistrate Judge**

---

alleged ineffectiveness. Such testimony shows petitioner's failure to satisfy the prejudice prong of *Strickland*.